JS-6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOS ANGELES WATERKEEPER, a California non-profit association,<br><br>       Plaintiff,<br><br>    v.<br><br>BODYCOTE THERMAL PROCESSING, INC., a Delaware corporation,<br><br>       Defendant. | Case No.: CV 23-7868-DMG (SKx)<br><br>**CONSENT DECREE** |

**WHEREAS,** Los Angeles Waterkeeper ("LA Waterkeeper" or the "Plaintiff") is a 501(c)(3) non-profit public benefit corporation organized under the laws of the State of California, with its main office in Santa Monica, California;

**WHEREAS,** LA Waterkeeper is dedicated to the preservation, protection and defense of the surface, ground, coastal and ocean waters of Los Angeles County from all sources of pollution and degradation;

**WHEREAS**, Bodycote Thermal Processing, Inc. ("Bodycote" or the "Defendant") owns and operates an industrial facility located at 2900 S. Sunol Dr., Vernon, California 90058, under Waste Discharger Identification number 4 19I001661 ("Facility");

**WHEREAS**, the Facility's industrial activities consist of annealing, tempering, aging, heat treating, and hardening of metal parts.  The Facility is categorized under Standard Industrial Classification ("SIC") Code 3398 – Metal Heat Treating;

**WHEREAS**, storm water discharges associated with industrial activity at the Facility are regulated by the National Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001 [State Water Resources Control Board], Water Quality Order 2014-0057-DWQ, as amended by Order Nos. 2015-0122-DWQ and 2018-0028-DWQ ("General Permit" or "Permit")[1], and the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 *et seq*. ("Clean Water Act" or "CWA"), Sections 301(a) and 402, 33 U.S.C. §§ 1311(a), 1342;

---

[1] Any reference to the "General Permit" or "Permit" shall be to the then-effective version, regardless of whether such changes are the result of amendments, revisions, reissuance, or similar modification of material terms.  Any reference in this Consent Decree to specific sections or subsections of the General Permit that are moved, modified, or otherwise changed in a subsequent version of the General Permit shall be to such subsequent reference(s) as if set forth herein, *e.g.*, the current §XI.B.6.c may be renumbered as §XI.B.7.c, combined into the current §XI.B.6.d, or split into a new §XI.B.6.c and §XI.B.6.d.

**WHEREAS**, Defendant's operations at the Facility have resulted in discharges of pollutants into waters of the United States and are subject to regulation by the Clean Water Act Sections 301(a) and 402. 33 U.S.C. §§ 1311(a), 1342;

**WHEREAS,** on July 18, 2023, Plaintiff issued a notice of intent to file suit ("60-Day Notice Letter") to Defendant, its registered agent, the Administrator of the United States Environmental Protection Agency ("EPA"), the Executive Director of the State Water Resources Control Board ("State Board"), the Executive Director Los Angeles Regional Water Quality Control Board ("Regional Board"), and the Regional Administrator of EPA Region IX, alleging violations of the Clean Water Act and the General Permit Water Quality Order 2014-0057-DWQ, as amended by Order Nos. 2015-0122-DWQ and 2018-0028-DWQ incorporating: 1) Federal Sufficiently Sensitive Test Method Ruling; 2) Total Maximum Daily Load Implementation Requirements; and 3) Statewide Compliance Options Incentivizing On-Site or Regional Storm Water Capture and Use, at the Facility;

**WHEREAS,** on September 20, 2023, LA Waterkeeper filed a complaint against Defendant in the Central District of California ("Court"), Civil Case No. CV 23-7868-DMG (SKx) ("Complaint");

**WHEREAS,** Plaintiff's Complaint alleged violations of the General Permit and the Clean Water Act for Defendant's discharges of pollutants into storm drains and surface waters, including the Los Angeles River, Los Angeles River Estuary, Queensway Bay, San Pedro Bay, and Pacific Ocean (collectively, "Receiving Waters");

**WHEREAS,** Plaintiff and Defendant (collectively, "Settling Parties" or "Parties") agree that it is in their mutual interest to enter into a Consent Decree setting forth terms and conditions appropriate to resolving the allegations set forth in the 60-Day Notice Letter and Complaint without further proceedings;

**WHEREAS,** all actions taken by Defendant pursuant to this Consent Decree shall be made in compliance with all applicable federal, state and local laws, rules and regulations.

**NOW THEREFORE IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES (SOLELY FOR PURPOSES OF RESOLVING THEIR DISPUTE THROUGH THIS CONSENT DECREE) AND IT IS ORDERED AND DECREED BY THE COURT AS FOLLOWS:**

1. For the purposes of this Consent Decree, the Court has jurisdiction over the subject matter of this action pursuant to Section 505(a)(1)(A) of the CWA, 33 U.S.C. § 1365(a)(1)(A).

2. For the purposes of this Consent Decree, venue is appropriate in the Central District Court pursuant to Section 505(c)(1) of the CWA, 33 U.S.C. § 1365(c)(1), because the Facility at which the alleged violations are taking place is located within this District.

3. For purposes of the Consent Decree, Defendant does not challenge that the Complaint states a claim upon which relief may be granted against Defendant pursuant to Section 505 of the CWA, 33 U.S.C. § 1365.

4. For the purposes of this Consent Decree, LA Waterkeeper has standing to bring this action.

5. The Court shall retain jurisdiction over this action for purposes of interpreting, modifying, or enforcing the terms of this Consent Decree, or as long

thereafter as necessary for the Court to resolve any motion to enforce this Consent Decree, but only regarding issues raised within the Term (as defined below) of this Consent Decree.

## I.    OBJECTIVES

6.    It is the express purpose of the Settling Parties through this Consent Decree to further the objectives of the Clean Water Act, and to resolve all issues alleged by LA Waterkeeper in its 60-Day Notice and Complaint.

7.    In light of these objectives and as set forth fully below, Defendant agrees to comply with the provisions of this Consent Decree.

## II.    AGENCY REVIEW AND DEFINITIONS

### A.    Agency Review of Consent Decree

8.    <u>Agency Review</u>.  Plaintiff submitted this Consent Decree to the United States Department of Justice and the EPA (the "Federal Agencies"), within three (3) business days of the final signature of the Parties, for agency review consistent with 40 C.F.R. § 135.5.  The agency review period expired forty-five (45) calendar days after receipt by the Federal Agencies, as evidenced by certified return receipts, copies of which shall be provided to Defendant, or upon the date that the Federal Agencies provide a no objection letter ("Agency Review Period"). Here, the Federal Agencies did not object to entry of this Consent Decree or to any portion of this Consent Decree.

9.    <u>Court Notice</u>. Plaintiff notified the Court of the receipt date by the Federal Agencies, as required by 40 C.F.R. § 135.5, in order to coordinate the Court's calendar with the Agency Review Period.

10.    <u>Entry of Consent Decree</u>.  Following expiration of the Agency Review Period, subject to Paragraph 8, Plaintiff submitted the Consent Decree to the Court for entry.

**B.    Definitions**

11.    Unless otherwise expressly defined herein, terms used in this Consent Decree which are defined in the CWA or in regulations or rules promulgated under the CWA have the meaning assigned to them in the statutes or regulations or rules.  Whenever terms listed below are used in this Consent Decree, whether or not capitalized, the following definitions apply:

a.    "BAT" means the Best Available Technology Economically Achievable.

b.    "BCT" means the Best Conventional Pollutant Control Technology, and collectively with BAT is referred to herein as "BAT/BCT."

c.    "BMPs" means Best Management Practices as defined in Attachment C (Glossary) of the General Permit.

d.    "Consent Decree" means this Consent Decree and any attachments or documents incorporated by reference.

e.    "Day" means a calendar day. In computing any period of time under this Consent Decree, where the last day of such period is a Saturday, Sunday, or Federal or State Holiday, the period runs until the close of business on the next day that is not a Saturday, Sunday, or Federal or State Holiday.

f.    "Design Storm" means the volume and flow rate of runoff produced from an 85th percentile, 24-hour storm event as defined in General Permit Section X.H.6.

g.    "Discharge Point" means each discharge location designated in the then-current SWPPP for the Facility.

h.    "Effective Date" means the Effective Date of this Consent Decree, which shall be the later of:  (i) the date of full execution by the Parties; and (ii) the date of full execution by the Parties of the Consent Decree relating to Defendant's facility at 3370 Benedict Way, Huntington Park, California 90255 ("Huntington Park Facility").

i.    "Entry Date" means the later of:  (i) the day this Consent Decree is approved and entered by the Court; and (ii) the day the Consent Decree relating to Defendant's Huntington Park Facility is approved and entered by the Court.

j.    "Forecasted Rain Event" means a forecasted rain event with a chance of precipitation that is fifty percent (50%) or more as determined by the National Oceanic and Atmospheric Administration (http://forecast.weather.gov/) for "90058, Maywood, CA, USA"[2].

k.    "MIP" means a Monitoring Implementation Plan.

l.    "PPT" means Pollution Prevention Team.

---

[2] Available at https://forecast.weather.gov/MapClick.php?lat=33.9879&lon=-118.1757.

m.     "Qualified Industrial Storm Water Practitioner" or "QISP" shall have the definition set forth in Section IX.A.1 of the General Permit.

n.     "Qualifying Storm Event" or "QSE" shall have the definition set forth in Section XI.B.1 of the General Permit.

o.     "Reporting Year" means the period from July 1 of a given calendar year to June 30 of the following calendar year.

p.     "SMARTS" means the California State Water Resources Control Board's Stormwater Multiple Application and Report Tracking System.

q.     "SWPPP" means a Storm Water Pollution Prevention Plan.

r.     "Term" means the period between the "Effective Date" and the "Termination Date."

s.     "Termination Date" means the latest of:

i.     June 30, 2026, if sampling results for storm water samples collected from the Facility do not demonstrate an "Advanced Treatment Exceedance" (as defined below) for copper in either the 2024-2025 or 2025-2026 Reporting Years;

ii.     June 30, 2027, if sampling results for storm water samples collected from the Facility demonstrate an "Advanced Treatment Exceedance" (as defined below) for copper in only one of the 2024-2025 and 2025-2026 Reporting Years, but do not demonstrate an Advanced

8

Treatment Exceedance for copper in the 2026-2027 Reporting Year;

iii.     June 30 following two (2) years after the advanced treatment system is fully installed, operational, and optimized, if installation of such system becomes required pursuant to the Consent Decree in Paragraph 26 below;

iv.     seven (7) days from the conclusion of any proceeding or process to enforce the Consent Decree initiated prior to the dates set forth in Paragraphs 11.s.i.-11.s.iii above; or

v.     seven (7) days from Defendant's completion of all payments and other requirements of this Consent Decree.

vi.     Notwithstanding sections 11.s.i-11.s.v above, if the Regional Board approves a Notice of Termination submitted for the Facility pursuant to Section II.C of the General Permit and Section II.A.6 of the General Permit Fact Sheet, the Termination Date shall be the later of: (1) the date that Defendant notifies LA Waterkeeper of the Regional Board's Approval of the Notice of Termination for the Facility, or (2) seven (7) calendar days from Bodycote's completion of all payments required by this Settlement Agreement.

t.     "Wet Season" means the period beginning October 1st of any given calendar year and ending May 31st of the following calendar year.

9

## III.    COMMITMENTS OF THE SETTLING PARTIES

### A.    Storm Water Pollution Control Best Management Practices

12.    <u>Non-Storm Water Discharge Prohibition.</u>  Any unauthorized non-storm water discharge, as defined in the General Permit, shall be subject to the Action Plan requirements set forth in Paragraph 24 below.

13.    <u>Rain Gauge/Sensor</u>.  Defendant shall install and maintain an electronic rain gauge or sensor at the Facility within thirty (30) days of the Effective Date.  The rain gauge/sensor shall be capable of measuring precipitation down to at least 0.1 inches, and record start/stop times and non-cumulative precipitation for each rain event.  During the Term, Defendant shall collect data using the gauge/sensor for all precipitation events to the nearest 0.1 inch, including start/stop times.  Data from the rain gauge/sensor shall be conclusive of precipitation quantities and timing for purposes of this Consent Decree.

14.    <u>Current and Additional Best Management Practices</u>.  At all times, Defendant shall implement BMPs identified in its SWPPP and BMPs described herein, and shall develop and implement additional BMPs as necessary to comply with the provisions of this Consent Decree and the General Permit.

15.    <u>Structural and Non-Structural BMPs for the Facility</u>.

a.    Within forty-five (45) days of the Effective Date, Defendant shall develop and implement the following BMPs at the Facility:

i.    At Defendant's election, consolidate and direct all storm water flows in Drainage Areas 2 and 3 to either DP-2 or DP-3, provided that if Defendant does not do so, it shall continue to sample at both DP-2 and DP-3;

      ii.      Improve or install Exposure Minimization BMPS (as described in Section X.H.2 of the General Permit), such as permanent or temporary shelters that prevent the contact of storm water with industrial materials stored in outdoor storage areas including:

            1.     All Hazardous Waste Storage Areas at the Facility; and

            2.     All storage areas at the Facility;

      iii.    Conduct daily sweeping of all paved industrial areas of the Facility using a Nilfisk CS7010 (or equivalent) mechanical sweeper;

      iv.    Replace the wattles/filters/socks when degraded or ineffective, including without limitation when there are rips, tears or other visual damage;

      v.     Institute a formal pre-rain protocol throughout the Wet Season to be implemented within twenty-four (24) hours prior to a Forecasted Rain Event, involving inspection of any filters and wattles deployed at the site, relocation or covering of any exposed waste material, and relocation under cover of uncontained or uncovered debris bins and trash cans under cover;

      vi.    Inspect hazardous material and waste storage areas before a Forecasted Rain Event for proper implementation and maintenance of control measures and containment integrity;

vii.    Inspect operations before a Forecasted Rain Event to ensure adequate implementation and maintenance of operational procedures and control measures;

viii.   Institute an equipment and vehicle maintenance program that ensures:

   1.    Upgrade forklift tires for forklifts that are used outdoors with zinc-free tires or other durable alternatives that minimize the release of dust, to the extent such tires are available for a given forklift;

   2.    No maintenance activities occur outdoors, unless such maintenance is required for safe operation of the Facility, *e.g.*, the forklift breaks down in a location that prevents ingress/egress;

   3.    maintenance activities occur only in designated work areas or beneath covered maintenance areas; and

   4.    when maintenance activities must be performed outdoors, action shall be taken to immediately contain, capture, and clean up any discharge or spills of waste fluids to the ground;

ix.    Inspect all outdoor drains monthly to ensure they are free of clogs and operating as intended;

x.    Maintain spill clean-up supplies at all fluid storage, hydraulic press and maintenance areas; and

12

xi.    Ensure that uncovered drip pans and waste containers that are not under cover are covered or transferred to proper containers as soon as practical, but at the latest by the end of the workday.

xii.    Within ten (10) days of BMPs in Paragraphs 15.a.i, 15.a.ii, and 15.a.viii.1 above being initially implemented, Defendant shall confirm to LA Waterkeeper in writing, with representative photographs, that such BMP has been implemented as set forth above.

**B.    Sampling at the Facility**

16.    Defendant shall develop a monitoring program consistent with the General Permit. During the Term, Defendant shall collect samples of storm water discharge from each Discharge Point from at least four (4) Qualifying Storm Events during each Reporting Year, to the extent there are that many, including, at minimum, the first two (2) Qualifying Storm Events during the first half of the Reporting Year, to the extent there are that many, and the first two (2) Qualifying Storm Events during the second half of the Reporting Year, to the extent there are that many.  Such sampling shall take place as soon as practicable within the four (4) hour period required by the General Permit § XI.B.5.  If Defendant is unable to collect a required sample under this Consent Decree at a discharge point because there is no discharge at that discharge point, then Defendant shall document the inability to sample by taking photographs during a rain event that is reasonably likely to lead to a discharge of that discharge point.  Defendant shall submit such photographs to LA Waterkeeper by email, along with rain gauge/sensor data for

the date of such rain event, within fifteen (15) days of a written request for such records by LA Waterkeeper.

17.    Sampling Parameters.  Except as set forth in Paragraph 18, all samples collected pursuant to this Consent Decree shall be analyzed, at minimum, for the parameters listed in Table 1.  Should Defendant conduct sampling for any additional parameters that are listed in 40 C.F.R. § 131.38 and/or in the General Permit as a result of changed operations, a revised pollutant source assessment, or a new mandate from a regulatory agency, such parameter shall be incorporated into this Consent Decree as if listed in Table 1 and shall be subject to the Action Plan requirements (as defined below).  Defendant shall immediately notify LA Waterkeeper of its intent to conduct sampling for any such additional parameters and the Parties shall meet and confer regarding the applicable Table 1 limit for such purposes within ten (10) days of such notification.

18.    Sampling for Zinc.  If during the 2024-2025 Reporting Year, Defendant has implemented the BMP described in Paragraph 15.a.viii.1 above, Defendant may cease sampling for zinc under this Consent Decree.

19.    Laboratory and Holding Time.  Except for pH samples, Defendant shall deliver all samples to a California-certified environmental laboratory for analysis within allowable hold times, pursuant to 40 C.F.R. Part 136.  Analysis of pH will be completed onsite using a portable instrument that is calibrated and used according to the manufacturer's instructions.

20.    Detection Limit.  Defendant shall request that the laboratory use analytical methods adequate to detect the individual pollutants at or below the values specified in the General Permit and Table 1 below.

21.    Reporting.  Defendant shall provide complete laboratory results of all

14

discharge samples collected at the Facility to LA Waterkeeper within five (5) days of receiving the complete laboratory report with the results, and shall submit such results to SMARTS as required by the General Permit.

**C.    Reduction of Pollutants in Discharges**

22.    <u>Table 1 Numeric Limits</u>.  Within forty-five (45) days of the Effective Date, for the Term of this Consent Decree, Defendant shall sample for the following constituents in accordance with Paragraphs 17 and 18 above:

TABLE 1[3]

| Parameter | Numeric Limit | Source of Limit |
|---|---|---|
| Oil & Grease | 15 mg/L (instantaneous) 25 mg/L (annual) | Permit NAL |
| pH | 6.5 – 8.5 s.u. (instantaneous) | Basin Plan |
| Total Suspended Solids (TSS) | 100 mg/L (instantaneous) 400 mg/L (annual) | Permit NAL |
| Zinc | 0.159 mg/L (instantaneous) 0.26 mg/L (annual) | Permit NEL/Permit NAL |
| Aluminum | 0.75 mg/L (annual) | Permit NAL |
| Copper | 0.06749 mg/L (instantaneous) 0.0332 mg/L (annual) | Permit NEL/Permit NAL |
| Iron | 1.0 mg/L (annual) | Permit NAL |
| Nitrate Plus Nitrite (as N) | 0.68 mg/L (annual) | Permit NAL |

---

[3] The numeric limits listed in Table 1 are for reference only, and the Table 1 limit for each listed parameter shall be the then-effective limit provided by the applicable source, e.g., if the NAL for iron is either increased to 1.1 mg/L or decreased to 0.90 mg/L, such new NAL, and not 1.0 mg/L, shall be used as the Table 1 limit for the

15

23.    <u>Stormwater Discharge Action Plan Trigger</u>. A "Stormwater Discharge Action Plan Trigger" is defined as any of the following:

a.    Where the sampling result or results would have an average from a sampling point for a given pollutant that in a Reporting exceeds the annual Numeric Limit specified in Table 1 had the pollutant been sampled four (4) times, regardless of how many times the pollutant had been sampled;[4]

b.    If any pollutant is sampled fewer than four (4) times from any sampling point in a Reporting Year, and there was otherwise no Stormwater Discharge Action Plan Trigger for that pollutant at that sampling point pursuant to Paragraph 23.a above, then where the average concentration of that pollutant from all storm water samples from that sampling point during that Reporting Year exceeds the applicable annual Numeric Limit specified in Table 1;[5] or

c.    Where the concentration of any pollutant in any two (2) storm water samples collected from that sample point in a Reporting

---

purposes of this Consent Decree as if set forth herein.  If the source of a limit in Table 1 is revised to no longer provide a limit for a given parameter, e.g., the NAL for iron being removed, then the applicable limit will be the current limit in place.

[4] E.g., there is a "Stormwater Discharge Action Plan Trigger" if the total concentrations for a given sample point exceed the limit when divided by four, regardless of how many samples have been taken. For example, if a sample from sampling point #1 during the first QSE of a Reporting Year has a concentration for iron of 5 mg/L, then the lowest possible an average of four could be is 1.25 mg/L, which exceeds the 1 mg/L identified in Table 1. So a Stormwater Discharge Action Plan Trigger will have occurred after the first sample is taken from that sample point.

[5] In other words, if there are fewer than 4 QSEs in a given year, the collective number of samples are divided by the number of samples taken, and not four, in determining if there is a Stormwater Discharge Action Plan Trigger.

16

Year exceeds any instantaneous numeric limit contained in Table 1.

24.     Action Plan. As of the expiration of the Agency Review Period, and for the remainder of the Term, Defendant shall submit an Action Plan as follows:

(a) if an unauthorized non-storm water discharge described in Paragraph 12 occurs, Defendant shall prepare and submit to LA Waterkeeper an Action Plan for avoiding unauthorized non-storm water discharges;

(b) if storm water samples demonstrate a Stormwater Discharge Action Plan Trigger as defined above,[6] Defendant shall prepare and submit to LA Waterkeeper an Action Plan to avoid a future Exceedance; or

(c) if after an advanced treatment system is installed, if ever, Defendant has a bypass other than in a Design Storm, Defendant shall prepare and submit to LA Waterkeeper an Action Plan for avoiding a future bypass in smaller than a Design Storm.

(d) However, an Action Plan shall not be required when the BMPs for the applicable unauthorized non-storm water discharge, discharge in smaller than a Design Storm, or a Stormwater Discharge Action Plain Trigger for the same pollutant in the same drainage area were addressed in a previous Action Plan in the same Reporting Year and such BMPs were not yet implemented as of the date of the applicable unauthorized non-storm water discharge, discharge in smaller than a Design Storm, or QSE sampling that led to the Stormwater Discharge Action Plan Trigger.[7]  The complete

---

[6] Except that no Action Plan will be required for zinc based on samples taken during the 2024-2025 Reporting Year.

[7] For clarity, an Action Plan based on an Exceedance shall be required if: (i) the applicable Exceedance is demonstrated for a pollutant and/or in a drainage area not addressed in a previous Action Plan in the same Reporting Year; and/or (2) when the applicable Exceedance is demonstrated for the same pollutant in the same

Action Plan shall be submitted to LA Waterkeeper within thirty (30) days of the unauthorized non-storm water discharge, the discharge of untreated storm water in smaller than a Design Storm, or the receipt of the laboratory report demonstrating the Exceedance, as applicable.

    a.    <u>Action Plan Requirements</u>.  Each complete Action Plan submitted shall include at a minimum:  (1) the identification of the contaminant(s) discharged in excess of the numeric limit(s) and/or the applicable unauthorized non-storm water discharge or the applicable discharge of untreated storm water in smaller than a Design Storm; (2) an assessment of the source of each contaminant exceedance and/or applicable unauthorized non-storm water discharge or the applicable discharge of untreated storm water in smaller than Design Storm; (3) the identification of additional BMPs that shall be implemented in an effort to achieve compliance with the numeric limit(s) and/or prevent future unauthorized non-storm water discharges or discharge of untreated storm water in smaller than Design Storm; and (4) time schedules for implementation of the proposed BMPs. The time schedule(s) for implementation shall ensure that all BMPs are implemented as soon as possible, but in no event later than ninety (90) days following the submission of the Action Plan, unless a later implementation date is mutually agreed upon by the Settling Parties.  Within

---

drainage area as in a previous Action Plan in the same Reporting Year and the BMPs in the previous Action Plan were fully implemented before the applicable QSE that led to the Exceedance was sampled.

seven (7) days of each of the BMPs set forth in the Action Plan being implemented, Defendant shall confirm to LA Waterkeeper in writing, with photographs, that such BMP has been implemented as set forth in the Action Plan.

b.  <u>Action Plan Proposed BMPs</u>.  The following BMPs are not required to be included but should generally be evaluated for inclusion in Action Plans:

i.  <u>Hydrologic Controls</u>.  Installation of additional berms or equivalent structural controls necessary to reduce or prevent storm water from flowing off site other than through any engineered storm water conveyance system or storm water retention or treatment facilities installed under this Consent Decree.

ii.  <u>Aerial Emissions Controls</u>.  Implement supplemental aerial emissions controls for blasting activities and equip vents with filters capable of trapping fine particulates.

iii.  <u>Sweeping</u>.  The increased/more frequent use of sweepers and manual sweeping in otherwise inaccessible areas.

iv.  <u>Treatment Systems</u>.  If a treatment system has been installed under this Consent Decree, installing additional components or systems, or otherwise improving, an advanced storm water treatment system, or making changes to the operation and maintenance protocols for such system, to provide more effective filtration treatment of storm water prior to discharge.

     v.    <u>Evaluation of Existing BMPs</u>.  Replacing, rehabilitating, or eliminating existing BMPs, taking into account the age of the BMPs involved or employed, the engineering aspect of the application of various BMPs, and any adverse environmental impact of the BMPs.

c.    <u>Action Plan Review</u>.  LA Waterkeeper shall have thirty (30) days upon receipt of Defendant's complete Action Plan to provide Defendant with comments.  Within thirty (30) days of receiving LA Waterkeeper's proposed revisions to an Action Plan, Defendant shall consider each of LA Waterkeeper's recommended revisions and accept them or justify in writing why any comment is not incorporated.  Action Plan(s) developed and implemented pursuant to this Consent Decree are an obligation of this Consent Decree.  Any disputes as to the adequacy of the action plan shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section IV below.  Disputes regarding the adequacy of a particular BMP shall not impact the schedule for implementing any other BMP set forth in the Action Plan.

d.    Defendant shall revise the then-current SWPPP to reflect the changes required by the Action Plan, as set forth in Paragraph 31.b.i. below. Additionally, if the then-current SWPPP states that the pollutant(s) that were the subject of the Action Plan are not exposed to storm water, then, unless Action Plan is not a result of exposure of such pollutant(s) to storm water, to the

extent required by the General Permit, Defendant shall revise the SWPPP to state that there is exposure.

e. <u>Action Plan Payments</u>.  Defendant shall pay Three Thousand Dollars ($3,000.00) each time an Action Plan is submitted to LA Waterkeeper prior to Defendant installing an advanced treatment system for the applicable Drainage Area, if ever, unless such Action Plan proposes as a BMP installing an advanced treatment system for such Drainage Area.  Defendant shall pay Five Thousand Dollars ($5,000.00) each time an Action Plan is submitted to LA Waterkeeper proposes installing an advanced treatment system for such Drainage Area, and after Defendant installs and operates a separate advanced treatment system for such Drainage Areas, if ever. Payments are due at the same time that the applicable Action Plan is submitted and shall be made to "Los Angeles Waterkeeper" via certified mail, return receipt requested to: Los Angeles Waterkeeper, c/o Barak Kamelgard, 360 E 2nd Street Suite 250, Los Angeles, CA 90012.  Failure to submit a payment as required under this paragraph will constitute a breach of the Consent Decree.

25. <u>Advanced Treatment System Exceedance</u>.  An "Advanced Treatment System Exceedance" is defined as (a) instantaneous NEL exceedances as defined in the General Permit for copper at a given sampling point or (b) an annual NAL exceedance as defined in the General Permit for copper for the entire Facility based on no more than the first four (4) QSEs in that Reporting Year.

26.     <u>Advanced Treatment System</u>.  Unless this Consent Decree has been terminated pursuant to Paragraph 11.s.vi above prior to the applicable dates below, Defendant shall develop, install, and operate an advanced treatment system sufficient to capture and treat storm water for, at minimum, copper, consistent with the Design Storm standard by (a) the later of seven (7) months from Defendant's receipt of the laboratory report demonstrating the Advanced Treatment System Exceedance or September 1, 2026, if sampling results for storm water samples collected from the Facility demonstrate an "Advanced Treatment System Exceedance" (as defined above) for copper in both the 2024-2025 and 2025-2026 Reporting Years; or (b) the later of seven (7) months from Defendant's receipt of the laboratory report demonstrating the Advanced Treatment System Exceedance or September 1, 2027, if sampling results for storm water samples collected from the Facility demonstrate an Advanced Treatment System Exceedance for copper in only one of the 2024-2025 and 2025-2026 Reporting Years, and also demonstrate an Advanced Treatment System Exceedance for copper in the 2026-2027 Reporting Year.  The Parties agree that these deadlines may be extended by agreement as a result of operational changes at the Facility, which agreement will not be unreasonably withheld or require court approval. Such system shall capture and treat storm water, at minimum, from the drainage area or drainage areas for which a Stormwater Discharge Action Plan Trigger was demonstrated, provided that Defendant may voluntarily elect to capture and treat storm water from other drainage areas.

          a.     Within seven (7) days of the installation of the advanced treatment system being completed and the advanced treatment system being fully operational and optimized, Defendant shall

22

confirm to LA Waterkeeper in writing certified by a QISP, with photographs, that installation of the system has been completed and that the system is fully operational and optimized.

b.      Notwithstanding the foregoing, Defendant may elect to install such an advanced treatment system at any point for any pollutant as a result of an Action Plan, as set forth in Paragraph 24.b.iv above.

**D.      Visual Observations**

27.    Storm Water Discharge Observations.  During the Term, appropriately trained staff of Defendant shall conduct visual observations during the Facility's operating hours as required by Section XI.A.2 of the General Permit, and any successor thereof.

28.    Non-Storm Water Discharge Observations.  During the Term, appropriately trained staff of Defendant shall conduct monthly non-storm water visual observations of the Facility that comply with all requirements of Section XI.A.1 of the General Permit, and any successor thereof.

29.    Visual Observations Records.  Defendant shall maintain observation records as required by XI.A.3 of the General Permit, as well as representative photographs. Defendant shall provide LA Waterkeeper with a copy of those records and photographs within fourteen (14) days of receipt of a written request from LA Waterkeeper for those records.  Defendant shall not be required to photograph anything it deems confidential business information and LA Waterkeeper shall not use the records for any purpose other than as a confidential

23

and informational communication, or a necessary as evidence in any dispute resolution proceeding.

30.    <u>Employee Training Program</u>.  Within forty-five (45) days of the Effective Date, Defendant shall develop and implement an employee training program that meets the following requirements:  (1) that there are employees at the Facility designated to achieve compliance with the Industrial General Permit and this Consent Decree ("Designated Employees"), and (2) that these Designated Employees are trained to perform the activities required by the Industrial General Permit and this Consent Decree ("Training Program"):

> a.    <u>Materials</u>.  Training materials should include, at minimum, a detailed Training Manual or Standard Operating Procedure, including drawings and diagrams where appropriate, for reference and use by Defendant's personnel to ensure effective implementation of all BMPs at the Facility;

> b.    <u>Language</u>.  The training and training materials shall be available and offered in the language(s) in which relevant employees are fluent.  If necessary, Defendant shall provide a translator or translators at all trainings where such translation is likely to improve staff comprehension of the Training Program and improve compliance with this Consent Decree and the Industrial General Permit;

> c.    <u>Training Frequency</u>.  Training shall be provided by a Qualified Industrial Storm Water Practitioner ("QISP", as defined in Section IX.A of the 2015 Permit) familiar with the requirements of this Consent Decree and the Industrial General

24

Permit, and shall be repeated as necessary to ensure that Designated Employees are familiar with the requirements of this Consent Decree, the Permit, and the Facility's SWPPP. All new Designated Employees shall receive this training before assuming responsibilities for implementing the SWPPP;

d.    Operational Procedures and Control Measures Training. Defendant shall train all Designated Employees at the Facility on to meet the requirements of Paragraph 29.a;

e.    Hazardous Materials and Waste Training.  Defendant shall train all Designated Employees at the Facility on appropriate hazardous materials use and hazardous waste control and disposal procedures;

f.    Sampling Training.  Defendant shall train Designated Employees at the Facility that conduct sampling on all proper sampling procedures required by the General Permit and this Consent Decree to ensure all samples are properly collected, stored, and submitted to a certified laboratory;

g.    Visual Observation Training.  Defendant shall provide training on how and when to properly conduct visual observations to Designated Employees;

h.    Non-Storm Water Discharge Training.  Defendant shall train all Designated Employees at the Facility on the Industrial General Permit's prohibition of non-storm water discharges, so that Designated Employees know what non-storm water

discharges are and how to detect and prevent non-storm water discharges;

i.    Employees.  All Designated Employees at the Facility shall participate in the Training Program annually.  New Designated Employees shall participate in the Training Program within thirty (30) days of their hiring date;

j.    Records.  The Defendant shall maintain training records to document compliance with this Paragraph, and shall provide LA Waterkeeper with a copy of these records within fourteen (14) days of receipt of a written request.

31.   SWPPP Revisions.

a.    Initial SWPPP Revisions.  To the extent not already incorporated, and to the extent necessary, Defendant shall amend the Facility's SWPPP to incorporate the requirements in this Consent Decree and comply with the General Permit and submit the complete, updated SWPPP to LA Waterkeeper within thirty (30) days of the Effective Date for LA Waterkeeper's review and comment.  The complete, updated SWPPP shall contain, at a minimum, the following elements:

i.    A pollutant source assessment, including all elements required by section X.G of the General Permit;

ii.   A detailed narrative description and assessment of each industrial activity with the potential to impact storm water quality occurring at the Facility as required by section X.G of the General Permit;

26

iii.  Descriptions of all BMPs in accordance with section X.H.4 of the General Permit, including without limitation BMPs required by this Consent Decree;

iv.  A set of site maps that comply with section X.E of the General Permit and provisions of this Consent Decree;

v.  A MIP as required by sections XI and X.I of the General Permit;

vi.  A designation (by position/title) of employees responsible for carrying out storm water management, monitoring, sampling, and SWPPP implementation, e.g., visual inspection of each specific area, monitoring each specific BMP, and sampling; and

vii.  A Training Program as described above in Paragraph 30.

b.  <u>Additional SWPPP Revisions</u>.

i.  Within thirty (30) days after approval of any Action Plan by LA Waterkeeper (or resolution pursuant to Dispute Resolution), Defendant shall revise the then-current SWPPP to reflect the changes required by the Action Plan and submit the complete, updated SWPPP to LA Waterkeeper for LA Waterkeeper's review and comment.

ii.  Within thirty (30) days after any changes in industrial activities, sources of industrial pollutants, changes to Discharge Points, or changes to sections of the SWPPP identified in the SWPPP as requiring a SWPPP revision

27

(including but not limited to, changes in Facility contacts or PPT members, changes or additions of BMPs, or changes in or additions of industrial activities that impact storm water discharge), Defendant shall revise the then-current SWPPP to reflect such changes and submit the complete, updated SWPPP to LA Waterkeeper for LA Waterkeeper's review and comment.

c.    Review of SWPPP.  For any SWPPP updates pursuant to Paragraphs 31.a. and 31.b., LA Waterkeeper shall have thirty (30) days upon receipt of Defendant's complete SWPPP to provide Defendant with comments.  Within thirty (30) days of receiving LA Waterkeeper's comments and proposed changes to the SWPPP, Defendant shall consider each of the comments and proposed changes and either accept them or justify in writing why a change is not incorporated.  The Parties agree to work in good faith to resolve any disputes with respect to the SWPPP, and any remaining disputes will be resolved through timely initiation of the dispute resolution procedures in Section IV below.  Following its incorporation of proposed modification or additions (if any) into each revised SWPPP, Defendant shall upload the revised SWPPP to SMARTS.

**E.    Compliance Monitoring and Reporting**

32.    Every year during the life of this Consent Decree, LA Waterkeeper may conduct one annual site inspection ("Site Inspection") for the purpose of

28

ensuring compliance with this Consent Decree and the Industrial General Permit. No more than two representatives of LA Waterkeeper may participate in such Site Inspection. In the event of a dispute regarding Defendant's compliance with this Consent Decree, and provided a Site Inspection would be relevant to resolving the Parties' dispute, the Parties agree to meet and confer regarding one additional Site Inspection for the term of the Consent Decree at Plaintiff's request. Plaintiff shall not unreasonably request, and Defendant shall not unreasonably deny, such Site Inspection. Any Site Inspection shall occur during normal business hours, and LA Waterkeeper will provide Defendant with at least twenty-four (24) hours' notice prior to a wet weather Site Inspection and at least seventy-two (72) hours' notice prior to a dry weather Site Inspection. For any Site Inspection requested to occur in wet weather, Plaintiff shall be entitled to adjust timing or reschedule during normal business hours (Monday through Friday, 8:00 a.m. to 5:00 p.m.) in the event the forecast changes and anticipated precipitation appears unlikely, and thus frustrates the purpose of visiting the Facility in wet weather. Notice will be provided by electronic mail to the individual(s) designated below at Paragraph 63. During the Wet Weather inspection, Plaintiff may request that Defendant collect a sample of industrial storm water discharge from the Facility's designated industrial discharge point(s) referenced in its SWPPP, to the extent that such discharges are occurring. Defendant shall collect the sample and provide a split sample to LA Waterkeeper. LA Waterkeeper's representative(s) may observe the split sample(s) being collected by Defendant's representative. LA Waterkeeper shall be permitted to take photographs or video recordings during any Site Inspection, provided that LA Waterkeeper shall not be permitted to photograph or video record anything Defendant deems confidential business information and LA

Waterkeeper shall not use such photographs or video recordings for any purpose other than as a confidential and informational communication, or a necessary as evidence in any dispute resolution proceeding.  LA Waterkeeper agrees that all individuals who will participate in a Site Inspection will execute the waiver and release attached as Exhibit C, prior to the Site Inspection, will abide by all of Defendant's safety rules, and will not enter any buildings at the Facility without Defendant's express permission.  LA Waterkeeper expressly recognizes that Defendant processes ITAR and EAR-regulated parts and components at the Facility, and that any and all access to the Facility by LA Waterkeeper and/or its representatives will be limited to those persons who are United States citizens or are lawful permanent residents of the United States.

33.    <u>Document Provision</u>.  During the Term, Defendant shall notify and submit documents to LA Waterkeeper as follows:

a.    Defendant shall copy LA Waterkeeper, by electronic mail to the individual(s) designated below at Paragraph 63, on all compliance documents, monitoring and/or sampling data, written communications and/or correspondences, or any documents related to storm water quality at the Facility that are submitted to the Regional Board, the State Board, and/or any state or local agency, county, municipality.

b.    Any compliance document, inspection report, written communication and/or correspondence, or any document related to storm water quality at the Facility received by Defendant from the Regional Board, the State Board, and/or any state or local agency, county, municipality shall be sent to

LA Waterkeeper within ten (10) business days of receipt by Defendant.  Defendant shall send electronic copies of documents to LA Waterkeeper at the relevant email addresses designated below at Paragraph 63.

34.    Compliance Monitoring.  Defendant agrees to partially defray costs associated with Plaintiff's monitoring of Defendant's compliance with this Consent Decree during the Term by paying five thousand dollars ($5,000) each year the Consent Decree is in effect.  The first payment shall be made within thirty (30) days of the Entry Date, and subsequent payments shall be made by the applicable anniversary for the Effective Date.  The payment shall be made via check, made payable to:  "Los Angeles Waterkeeper" via certified mail, return receipt requested to Los Angeles Waterkeeper, c/o Barak Kamelgard, 360 E 2nd Street Suite 250, Los Angeles, CA 90012.  Failure to submit payment as required under this Paragraph will constitute breach of the Consent Decree.

**F.    Environmentally Beneficial Project, Litigation Fees and Costs, Stipulated Penalties, and Interest**

35.    Environmentally Beneficial Project.  To fund environmentally beneficial project activities that will reduce or mitigate the impacts of storm water pollution from industrial activities occurring in waters tributary to the Los Angeles River, Defendant shall make a payment totaling Sixty-Seven Thousand Five Hundred Dollars ($67,500.00) to the Trust for Public Land to be used for the Urban Orchard Project, which will create a park and wetlands that will capture and filter stormwater, to improve water quality and fish habitats, made within thirty (30) days of the Entry Date, payable to The Trust for Public Land, Attention Lisa Rossman (Controller, Senior Finance and BI Systems Director), and sent via

31

overnight mail to PO Box 889336, Los Angeles, CA 90088-9336.  Failure to submit payment as required under this Paragraph will constitute breach of the Consent Decree.

36.    LA Waterkeeper's Fees and Costs.  Defendant shall pay a total of Eighty-Seven Thousand Five Hundred Dollars ($87,500.00) to LA Waterkeeper to partially reimburse Plaintiff for its investigation fees and costs, expert/consultant fees and costs, reasonable attorneys' fees, and other costs incurred as a result of investigating and filing the lawsuit, and negotiating a resolution of this matter. The payment in full shall be made via check within thirty (30) days of the Entry Date and made payable to: "Aqua Terra Aeris Law Group" via certified mail, return receipt requested to Aqua Terra Aeris Law Group, c/o Jason Flanders, 4030 Martin Luther King Jr. Way Oakland, CA 94609.  Failure to submit payment as required under this Paragraph will constitute breach of the Consent Decree.

37.    Missed Deadlines.  In the event that Defendant fails to submit to LA Waterkeeper any payment, document, report, or communication required by this Consent Decree, Defendant shall pay a stipulated payment of Five Hundred Dollars ($500) per day.  Such stipulated payments shall be made by check payable to The Trust for Public Land, Attention Lisa Rossman (Controller, Senior Finance and BI Systems Director), and such funds shall be used for the sole purpose of funding environmentally beneficial projects, as described in Paragraph 35. Payment shall be sent via overnight mail to PO Box 889336, Los Angeles, CA 90088-9336.  Defendant agrees to make the stipulated payment within fourteen (14) days after the resolution of the event that precipitated the stipulated payment liability.

38.    <u>Interest on Late Payments</u>.  Defendant shall pay simple interest on any payments, fees, or costs owed to LA Waterkeeper under this Consent Decree that LA Waterkeeper has not received by the due date.  The interest shall accrue starting the first day after the payment is due and shall be computed at a rate equal to the lower of:  (i) 10% per year (0.833% per month); or (ii) the maximum rate permitted by applicable law, unless Dispute Resolution has been invoked by Defendant under Section IV below, in which case interest shall not start to accrue until the conclusion of Dispute Resolution.  Interest shall continue to accrue on any outstanding balance until Defendant is current on all payments then due under this Consent Decree, and shall be paid at the same time that the payments, fees, or costs owed are paid to LA Waterkeeper.  Interest on late payments shall be paid by check payable to:  The Trust for Public Land, Attention Lisa Rossman (Controller, Senior Finance and BI Systems Director), and such funds shall be used for the sole purpose of funding environmentally beneficial projects, as described in Paragraph 35.  Payment shall be sent via overnight mail to PO Box 889336, Los Angeles, CA 90088-9336.

## IV.    Dispute Resolution

39.    This Court shall retain jurisdiction over this matter for the term of this Consent Decree for the purposes of enforcing its terms and conditions, and adjudicating all disputes among the Parties that may arise under the provisions of this Consent Decree.  The Court shall have the power to enforce this Consent Decree with all available legal and equitable remedies, including contempt.

40.    <u>Meet and Confer</u>.  Either Party to this Consent Decree may invoke the dispute resolution procedures of this Section IV by notifying the other Party in writing of the matter(s) in dispute and of the disputing Party's proposal for

resolution within thirty (30) days of when a dispute has arisen.  The Parties shall then meet and confer in good faith (either telephonically or in person) within ten (10) days of the date of the notice in an attempt to fully resolve the dispute no later than thirty (30) calendar days from the date of the meet and confer.  The Parties may extend any of these deadlines as well as those in Paragraph 41 by agreement.

41.    <u>Settlement Conference</u>.  If the Parties cannot resolve the dispute within thirty (30) days of the meet and confer described in Paragraph 40, the Parties agree that the dispute may be submitted for formal resolution by filing a motion before the United States District Court for the Central District of California.  The Parties agree to request an expedited hearing schedule on the motion.

42.    In resolving any dispute arising from this Consent Decree before the Court, the Parties shall be entitled to seek fees and costs incurred pursuant to the provisions set forth in Section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d), and applicable case law interpreting such provisions.

**V.    Mutual Release of Liability and Covenant Not to Sue**

43.    <u>Plaintiff's Release</u>.  In consideration of  the above, upon the Effective Date of this Consent Decree, LA Waterkeeper on its own behalf and, to the extent in LA Waterkeeper's control, on behalf of its current officers, directors, members, employees, predecessors, successors, assigns, agents, attorneys, and other representatives release Defendant, and each of its current officers, directors, employees, shareholders, parents, affiliates, agents, attorneys, consultants, representatives, predecessors, successors, and assigns, from and waives all claims related to the Facility that were raised or could have been raised in the 60-Day

Notice Letter and/or the Complaint up to and including the Termination Date of this Consent Decree, including all claims for injunctive relief, penalties, fees (including without limitation fees of attorneys, experts, and others), liabilities, costs, expenses or any other sum incurred or claimed, except to the extent owed or required pursuant to this Consent Decree.

44.    Defendant's Release.  In consideration of the above, upon the Effective Date of this Consent Decree, Defendant, on its own behalf and, to the extent in Defendant's control, on behalf of its current officers, directors, employees, agents, attorneys, consultants, representatives, parents, subsidiaries, predecessors, successors and assigns, and their agents, attorneys, and other representatives, release LA Waterkeeper (and its current officers , directors, employees, members, parents, subsidiaries, and affiliates, and each of their successors and assigns, and its agents, attorneys, and other representatives) from, and waive, all claims related to the Facility that were raised or could have been raised in the 60-Notice Letter and/or the Complaint up to and including the Termination Date of this Consent Decree, including all claims for injunctive relief, penalties, fees (including without limitation fees of attorneys, experts, and others), liabilities, costs, expenses or any other sum incurred or claim, occurring or arising up and including to the Termination Date.

45.    Waiver of California Civil Code § 1542.  Upon the Effective Date of this Consent Decree, the Parties further expressly waive any rights or benefits available to them under the provisions of California Civil Code §1542, which provides as follows:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.

46.     <u>Covenant Not to Sue</u>.  For the period beginning on the Effective Date and ending on the Termination Date, Plaintiff agrees that neither it, nor, to the extent in LA Waterkeeper's control, its current officers, directors, employees, members, successors, assigns, agents, attorneys and/or other representatives, will file any new lawsuit against Defendant related to the claims against the Facility raised or that could have been raised in the 60-Notice Letter and the Complaint, and/or the maters addressed by this Consent Decree, excepting only an action to enforce this Consent Decree.

47.     <u>Dismissal</u>.  Provided that the Court retains jurisdiction over the Civil Action for the purposes of interpreting, modifying, or enforcing the terms of this Consent Decree, or as long thereafter as necessary for the Court to  resolve any motion to enforce this Consent Decree, but only issues raised with the Term of the Consent Decree, as requested in Paragraph 5, Plaintiff shall dismiss the Complaint in its entirety, with prejudice, immediately after the Court approves and enters this Consent Decree, pursuant to Federal Rule of Civil Procedure 41(a)(2).

48.     Nothing in this Consent Decree limits or otherwise affects Plaintiff's rights to address or take any position that it deems necessary or appropriate in an informal or formal proceeding before the State Board, Regional Board, EPA, or any other judicial or administrative body on any matter relating to Defendant's compliance at the Facility with the General Permit or the Clean Water Act occurring or arising after the Effective Date.

## VI.   Miscellaneous Provisions

49.     <u>No Admission of Liability</u>.  The Parties enter into this Consent Decree for the purpose of avoiding prolonged and costly litigation.  Neither the Consent Decree nor any payment pursuant to the Consent Decree shall constitute

or be construed as a finding, adjudication, or acknowledgement of any fact, law or liability, nor shall it be construed as an admission of violation of any law, rule, or regulation. The Defendant maintains and reserves all defenses it may have to any alleged violations that may be raised in the future.

50.    Counterparts.  This Consent Decree may be executed in any number of counterparts, all of which together shall constitute one original document. Telecopy and/or facsimile copies of original signature shall be deemed to be originally executed counterparts of this Consent Decree.

51.    Authority.  The undersigned representatives for Plaintiff and Defendant each certify that s/he is fully authorized by the Party whom s/he represents to enter into this Consent Decree.  A Party's signature to this Consent Decree transmitted by facsimile or electronic mail shall be deemed binding.

52.    Construction.  The language in all parts of this Consent Decree shall be construed according to its plain and ordinary meaning, except as to those terms defined in the Permit, the Clean Water Act, or specifically herein.  The captions and paragraph headings used in this Consent Decree are for reference only and shall not affect the construction of this Consent Decree.

53.    Full Settlement.  This Consent Decree constitutes a full and final settlement of this matter.

54.    Integration Clause.  This is an integrated Consent Decree. This Consent Decree is intended to be a full and complete statement of the terms of the agreement between the Parties and expressly supersedes any and all prior oral or written agreements, covenants, representations, and warranties (express or implied) concerning the subject matter of this Consent Decree.

55.    <u>Severability</u>.  In the event that any provision, paragraph, section, or sentence of this Consent Decree is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

56.    <u>Choice of Law</u>.  The laws of the United States shall govern this Consent Decree.

57.    <u>Diligence</u>.  Defendant shall diligently file and pursue all required permit applications for the structural BMPs and shall diligently procure contractors, labor, and materials needed to complete all BMPs by the required deadlines.

58.    <u>Effect of Consent Decree</u>.  Compliance with this Consent Decree does not mean that Defendant is complying with the Industrial General Permit, the Clean Water Act, or any other law, rule, or regulation nor does non-compliance mean that Defendant is not complying with the Industrial General Permit, the Clean Water Act, or any other law, rule, or regulation.

59.    <u>Negotiated Settlement</u>.  The Settling Parties have negotiated this Consent Decree, and agree that it shall not be construed against the Party preparing it, but shall be construed as if the Settling Parties jointly prepared this Consent Decree, and any uncertainty and ambiguity shall not be interpreted against any one Party.

60.    <u>Modification of the Consent Decree</u>.  This Consent Decree, and any provisions herein, may not be changed, waived, discharged, or terminated unless by a written instrument, signed by the Parties and approved by the Court, excepting the extensions described in Paragraph 26 above.  Any request to modify any provision of the Consent Decree, including but not limited to any deadline(s)

set forth herein, must be made in writing at least fourteen (14) days before the existing deadline(s) applicable to the provision(s) proposed to be modified.

61.    Assignment.  Subject only to the express restrictions contained in this Consent Decree, all of the rights, duties and obligations contained in this Consent Decree shall inure to the benefit of and be binding upon the Parties, and their successors and assigns.  Defendant shall notify Plaintiff within ten (10) days of any assignment.

62.    Force Majeure.  Neither of the Parties shall be considered to be in default in the performance of any of their respective obligations under this Consent Decree when performance is prevented or delayed due to a Force Majeure Event.  For purposes of this Consent Decree, a "Force Majeure Event" is any circumstance beyond the control of a Settling Party's, their contractors or any entity controlled by a Settling Party, including without limitation, any act of God, war, fire, earthquake, flood, windstorm, pandemic, public health crisis, or natural catastrophe; criminal acts; civil disturbance, vandalism, sabotage, or terrorism; restraint by court order or public authority or agency; or action or non-action by, or inability to obtain the necessary authorizations or approvals from any governmental agency.  A Force Majeure Event shall not include normal inclement weather, financial, inability to pay, or employee negligence.  Any party seeking to rely upon this Paragraph to excuse or postpone performance shall have the burden of establishing that it could not reasonably have been expected to avoid the Force Majeure event and which by exercise of due diligence has been unable to overcome the failure of performance.  The Parties shall exercise due diligence to resolve and remove any Force Majeure event.  Defendant shall provide notice to Plaintiff orally or by electronic or facsimile transmission as soon as practicable,

but not later than ten (10) days after the time Defendant first knew of, or by the exercise of due diligence, should have known of, a claimed Force Majeure Event. The notice shall describe the event and the length of any extension sought.  If the Plaintiff agrees that a Force Majeure Event, as defined by this Section, has occurred, the Plaintiff shall agree to extend the time for Defendant to perform the affected requirements for the time necessary to complete those obligations. Failures resulting from a Force Majeure Event shall not be considered a breach of this Consent Decree, and Defendant shall not be liable for any stipulated penalties occurring as a direct result of the Force Majeure Event, provided Defendant complies with the terms of this Paragraph.  If the Plaintiff does not agree that a Force Majeure Event, as defined by this Paragraph, has occurred, or does not agree to the length of the extension of time sought by Defendant, the Plaintiff's position shall be binding, unless Defendant invokes Dispute Resolution under Section IV of this Consent Decree.  In any such dispute, Defendant bears the burden of proving, by a preponderance of the evidence, that each claimed force majeure event is a Force Majeure Event, that Defendant gave the notice required by this Paragraph, that the Force Majeure Event caused any failure to comply or delay in compliance with an obligation of this Consent Decree that Defendant claims was attributable to that event, and that Defendant exercised reasonable efforts to prevent or minimize any failure or delay in compliance caused by the event.

63.    Correspondence.  All notices required herein or any other correspondence pertaining to this Consent Decree shall be, to the extent feasible, sent via electronic mail transmission to the e-mail address listed below, or if

electronic mail is not feasible, then by certified U.S. mail with return receipt, or by hand delivery to the following addresses:

<u>If to Plaintiff</u>:
Los Angeles Waterkeeper
Barak Kamelgard
Benjamin Harris
Madeleine Siegel
360 E 2nd St., Suite 250
Los Angeles, CA 90012
Email: barak@lawaterkeeper.org
Email: ben@lawaterkeeper.org
Email: madeleine@lawaterkeeper.org
Phone: (310) 394-6162

<u>If to Defendant</u>:
James Harris
Reed Randel
Holland & Knight, LLP
One Arts Plaza
1722 Routh Street, Suite 1500
Dallas, Texas 75201
Jim.Harris@hklaw.com
Reed.Randel@hklaw.com

<u>With copies to</u>:
Aqua Terra Aeris Law Group
Jason R. Flanders
Theresa M. Trillo
4030 Martin Luther King Jr. Way
Oakland, CA 94609
Email: jrf@atalawgroup.com
Email: tt@atalawgroup.com
Phone: (916) 202-3018

<u>With copies to</u>:
Eric Sagehorn
Eric.sagehorn@bodycote.com
Bodycote Thermal Processing, Inc.
12750 Merit Drive, Suite 1400
Dallas, TX 75251

Notifications of communications shall be deemed submitted three (3) days after the date that they are postmarked and sent by first-class mail, or immediately after acknowledgement of receipt via email by the receiving Party. Any change of address or addresses shall be communicated in the manner described above for giving notices.

      64.    If for any reason the Federal Agencies had objected to entry of this Consent Decree or to any portion of this Consent Decree, which they did not, the

Parties would have used their best efforts to work together to modify the Consent Decree within thirty (30) days so that it was acceptable to the Federal Agencies.

The Parties hereto have entered into this Consent Decree and submitted it to the Court for its approval and entry as a final judgment.

IN WITNESS WHEREOF, the undersigned have executed this Consent Decree as of the date first set forth below.

APPROVED AS TO CONTENT

Dated: _____August 13___, 2024          By: _____

                                                         Bruce Reznik
                                                         Executive Director
                                                         Los Angeles Waterkeeper

Dated: August 15, 2024          By: _____

Digitally signed by Thomas J. Gibbons
Date: 2024.08.15 11:34:41 -05'00'

                                                         Tom Gibbons
                                                         Divisional President CHT, ADE
                                                         Bodycote Thermal Processing, Inc.

APPROVED AS TO FORM

                                                         AQUA TERRA AERIS LAW GROUP

Dated: _____August 13___, 2024          By: _____

                                                         Jason R. Flanders
                                                         Attorney for Plaintiff

LOS ANGELES
WATERKEEPER

HOLLAND & KNIGHT LLP

Dated: _____August 15___, 2024          By: _____
                                              James B. Harris
                                              Attorney for Defendant
                                              BODYCOTE THERMAL
                                              PROCESSING, INC.

     The Court hereby **APPROVES** and **ENTERS** the above-captioned Consent Decree, which constitutes the final judgment in this action.  Plaintiff's claims are therefore **DISMISSED with prejudice**.  The Court retains jurisdiction over this action for purposes of interpreting, modifying, or enforcing the terms of this Consent Decree.

Dated:  October 8, 2024

_____
DOLLY M. GEE
Chief United States District Judge

43